UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

K.B.A. CONSTRUCTION, LLC,
*et al.*,

                Plaintiffs,

                                        Case No. 1:05-CV-264

v.

                                        Hon. Richard Alan Enslen

HOME ACRES BUILDING SUPPLY
CO, *et al.*,

                Defendants.

                                          **OPINION**

_____/

      Defendants Home Acres Building Supply Company, Grant R. Ellis and Jerry L. Jonker have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  The relief is opposed by Plaintiffs K.B.A. Construction, LLC, Capital Drywall Supply, Inc., and Grand Rapids Drywall Supplies, Inc.  Oral argument is unnecessary since the issues raised may be readily resolved based on the briefing presented.

      **BACKGROUND**

      This suit was filed in the Ingham County Circuit Court on or about March 17, 2005.  The Complaint was verified and included a federal law claim under the civil remedy provision of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), in Count II of the Complaint.[1]  (Compl. 11.)  The Complaint also contained a state law claim for tortious interference with business advantage.  (Compl. 10-11.)

_____

      [1]The Complaint did not specifically refer to the civil remedy provision, but such was its obvious intent.

On April 6, 2005, Defendants' counsel filed a Notice of Removal with this Court, removing the Complaint based upon federal question jurisdiction.  (Not. of Removal ¶ 4.)

On July 14, 2005, Defendants filed the present Motion for Judgment on the Pleadings.

On August 3, 2005, Plaintiffs moved to amend their Complaint to state additional factual allegations pertinent to the two claims asserted.  They did not seek to assert additional legal claims. Since the filing of the Motion to Amend, the briefing of the Motion for Judgment on the Pleadings has assumed that the Motion to Amend would be granted, which assumption is shared by this Court.[2]

According to the Proposed Amended Complaint, Defendants violated RICO by committing predicate acts of "rebates and kickbacks and mail and wire fraud."  (Prop. Am. Compl. ¶ 25.)  The Proposed Amended Complaint gave examples of the conduct at issue which included: (1) paying cash without issuing Form 1099 to recipients (*id.* ¶ 25(A)); (2) paying vacation expenses conditioned on excluding others from the marketplace (*id.* ¶ 25(B)); and, (3) paying rebates to subcontractors in exchange for "loyalty" (*id.* ¶ 26(A)-(D).)   The Proposed Amended Complaint asserts that Defendants' conduct was in violation of 18 U.S.C. § 1962(a), which prohibits the receipt of the proceeds of racketeering activities, and § 1962(d), which prohibits conspiracies to commit racketeering.  (*Id.* ¶ 51.)   The Proposed Amended Complaint also asserts that the "racketeering" was used to eliminate or depress business competition, including competition by Plaintiffs. (*Id.* ¶ 19.)

_____

[2]Should the assigned Magistrate Judge reject the amendment, then the reasons for dismissal outlined in this Opinion are even stronger, given the allegations of the original Complaint.

**LEGAL STANDARDS**

Defendants have requested judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the ground that the allegations made in the pleadings establish that it is entitled to judgment as a matter of law. The standard for deciding a motion for judgment on the pleadings is the same standard applicable to motions under Rule 12(b)(6). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). Under Rule 12(b)(6), a court must accept all well-pleaded allegations of the complaint as true and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). To support a claim for relief, the allegations of the complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993).

Rule 12(c) also permits the Court to consider a motion for judgment on the pleadings as a summary judgment motion if materials outside of the pleadings are presented and not excluded. Rule 12(c) provides the Court with broad discretion to exclude matters outside the pleadings from consideration. *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). In the present case, the Motion itself does not present matters outside the pleadings.[3] Plaintiffs have filed affidavits in response to this Motion and have requested that the Motion be treated as a summary judgment motion. (*See* Dkt. Nos. 70 & 71 & Exs. 1-3.) This request was not elegantly made, nor is it well

---

[3]The Motion references exhibits, but those exhibits are merely legal authorities, and not documentary evidence.

received.  The purpose of the Motion was to ensure Defendants the fair notice promised by the pleading system.  The consideration of affidavits and evidentiary matters only distracts from the more basic inquiry.  Therefore, the Court excludes reference to matters outside the pleadings for the purpose of resolving this Motion.

## LEGAL ANALYSIS

The Court begins its analysis with the federal RICO claim asserted.  To prove a RICO claim, a plaintiff must plead and prove (among other things) that the defendant committed at least two RICO predicate offenses.  18 U.S.C. § 1961(5).  RICO predicate offenses are listed at 18 U.S.C. § 1961(1).  The only acts mentioned in the Proposed Amended Complaint which could qualify as RICO predicate offenses are extortion, mail fraud and wire fraud.[4]

However, a review of the allegations of extortion, mail fraud and wire fraud show those allegations to be legally insufficient.  As to mail and wire fraud, a plaintiff must plead and show a scheme or artifice to intentionally defraud another using either the mails or an electronic communication.  *VanDenBroeck v. Commonpoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2001).  Further, allegations of mail and wire fraud must be pled with specificity in light of the Rule 9(b) particularity requirement for pleading fraud.  *Eby v. Producers Co-Op, Inc.*, 959 F. Supp. 428, 431 (W.D. Mich. 1997).  "'[L]oose references to mails and telephone calls' in furtherance of a purported scheme to defraud will not do.  Instead, the plaintiff must, within reason, describe the time, place and content of the mail and wire communications, and . . . identify the parties to the communications."

---

[4]The Complaint refers to commercial bribery, but the kind of bribery specified is a misdemeanor under Michigan law and, therefore, not a RICO predicate.  *See* 18 U.S.C. § 1961(1) (defining "bribery" as punishable by imprisonment for more than one year).

*Jepsen, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).   In this case, there is nothing in the pleadings even approaching a particular allegation of mail or wire fraud.

As to extortion, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right."  18 U.S.C. § 1951(b)(2). The question raised by the pleadings herein is whether threatening to withdraw business from a manufacturer as part of business negotiations may constitute extortion. The answer to this question is "No!"–"not in an open and free market."

RICO's racketeering predicate section, 18 U.S.C. § 1961(1), adopts the  definition of "extortion" from the definition within the Hobbs Act–"the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).   Most of the case law describing extortion has described it in the context of traditional violence and threats to do physical violence against a person.  *See Kovian v. Fulton County Bank & Trust*, 647 F. Supp. 830, 837 n.7 (N.D.N.Y. 1986); *see also O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990).  The only case cited by Plaintiffs for the proposition that "economic fear" may be extortionate is *Center Cadillac, Inc. v. Bank Leumi Trust Co.,* 808 F. Supp. 213 (S.D.N.Y. 1992).  The *Center Cadillac* case did allow this theory in the limited circumstances where the victim has a reasonable fear of economic ruin and where the threats are made as part of a "wrongful goal."  *Id.* at 231-32.  This theory does not ordinarily include the use of leverage to drive a hard economic bargain.  *Id.* at 231.  Indeed, in the *Center Cadillac* case the finding was premised on the fact that the defendants in *Center Cadillac* used threats to obtain the payment of monies that were not due them and without any transfer for value.  *Id.* at 232.

In the instant case, nothing is comparable.  The only "threat" made was to cease business with Plaintiffs if they did not agree to terms–which is a standard and commercially reasonable thing to do in any open market industry.   Such does not constitute "extortion" because there is no "wrongful goal" as part of the economic negotiations, nor is there any attempt to profit without exchanging value.   Accordingly, Plaintiffs' RICO claim must be dismissed due to failure to state a claim for which relief may be granted.

**STATE LAW CLAIM**

Plaintiffs' remaining claim is a state law claim for tortious interference with business advantage.  This Court has supplemental jurisdiction over such claim under 28 U.S.C. § 1367.  This is significant since with the dismissal of the federal RICO claim, the Court must determine whether or not to retain jurisdiction over the state law claim under section 1367(c)(3).

As specified in § 1367 and in the common law–cases such as *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), even after federal claims are dismissed in suit, the federal court retains subject matter jurisdiction over state law claims subject to its own judgment as to whether to exercise such jurisdiction.  While such is discretionary, the strong federal custom since *Gibbs* has been to dismiss those claims in order to permit state courts to decide their own law, as is their prerogative.

The history and operation of this statute was explained by the Sixth Circuit in *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996):

> However, there is a second problem with the district court's assertion of supplemental jurisdiction over the unpled state law claims.  On the particular facts of this case, it was an abuse of discretion to retain the state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218

6

(1966) established the doctrine of supplemental jurisdiction as a matter of federal common law. Essentially, *Gibbs* held that a federal court can decide a state law claim that forms part of the same "case or controversy" as a claim over which the court has jurisdiction. *Ibid.* Since *Gibbs,* federal courts have expanded and shaped the doctrine of supplemental jurisdiction by applying it to new circumstances.

In 1990, Congress passed a supplemental jurisdiction statute, now codified at 28 U.S.C. § 1367. Although § 1367 overruled *Finley v. United States,* 490 U.S. 545, 109 S. Ct. 2003, 104 L.Ed.2d 593 (1989) (restrictions on jurisdiction over third parties), the statute affirmed *Gibbs,* as interpreted by subsequent federal courts, as the proper measure of federal supplemental jurisdiction. . . .

A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit,* 738 F.2d 163, 166 (6th Cir.1984). That discretion, however, is bounded by constitutional and prudential limits on the use of federal judicial power. *Gibbs* itself expressed one of the most important of these limits: "Certainly, if the federal claims are dismissed before trial, even though [the federal claims are] not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

The word "certainly" was effectively erased by *Rosado v. Wyman,* 397 U.S. 397, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970). There the Court held that a district court did not abuse its discretion in retaining jurisdiction over supplemental state law claims after it dismissed the touchstone federal claim for mootness before trial. 397 U.S. at 405, 90 S. Ct. at 1214. *Rosado* held that there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims. *Ibid.* Instead, the decision depends on "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). This approach was codified at 28 U.S.C. § 1367(c)(3), which provides that a district court "may" (rather than must) decline to exercise jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."

*Musson Theatrical, Inc.*, 89 F.3d at 1254. Further, the *Musson* Court specified that when federal claims are dismissed as part of a Rule 12(b)(1) or 12(b)(6) motion, then the district courts should exercise their jurisdiction to dismiss the remaining state law claims except in certain narrow and limited "unusual circumstances." *Id.* *See also Jacoboni v. KPMG LLP*, 314 F. Supp. 2d 1172, 1180-81 (M.D. Fla. 2004).

7

However, because this case was removed from state court, the Court will remand the state law claims to state court rather than dismiss them pursuant to section 1367(c)(3).  This is in keeping with the advice from *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988), that remand be used in such circumstances to avoid re-filing time and expense.

**<u>CONCLUSION</u>**

In accordance with the Opinion of this date, a Partial Judgment shall enter dismissing Plaintiffs' RICO claim with prejudice and remanding Plaintiffs' state law claim to the Ingham County Circuit Court.

<div style="margin-left:40%">/s/ Richard Alan Enslen</div>

DATED in Kalamazoo, MI:                    RICHARD ALAN ENSLEN
   September 14, 2005                         SENIOR UNITED STATES DISTRICT JUDGE